# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GLENDA SUE HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-00110** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment Based Upon the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16. Plaintiff has filed a "Response of Plaintiff to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record" which the Court will construe as a Reply. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based Upon the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on August 2, 2006, alleging that she had been disabled since June 12, 2006, due to fibromyalgia, degenerative disc disease, "nerves," high cholesterol, right arm pain, and carpal tunnel syndrome in her left wrist.  *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 68, 106-08, 124.  Plaintiff's application was denied both initially (TR 63) and upon reconsideration (TR 64).  Plaintiff subsequently requested (TR 75) and received (TR 21-43) a hearing.  Plaintiff's hearing was conducted on May 26, 2009, by Administrative Law Judge ("ALJ") Joan A. Lawrence.  TR 21.  Plaintiff and vocational expert ("VE"), Edward Moffett Smith, appeared and testified.  TR 21-22.

On June 24, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 11-20.  Specifically, the ALJ made the following findings of fact:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2.    The claimant has not engaged in substantial gainful activity since June 12, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.    The claimant has the following severe impairments: fibromyalgia; degenerative disc disease (DDD); high cholesterol; carpal tunnel syndrome; obesity; affective, [*sic*] and anxiety related disorder (20 CFR 404.1520(c)).
>
> 4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

CFR 404.1567(b) except she can perform no more than occasional postural activities, and has the need to avoid extreme temperatures including humidity. She is unable to constantly use her hands. She has limited but satisfactory or mild limitations when dealing with the public; dealing with work stresses; maintaining attention/concentration; ability to understand, remember, and carry out detailed instructions; respond appropriately to changes in the work setting, and the ability to complete a normal workweek.

6.     The claimant is capable of performing past relevant work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability as defined in the Social Security Act, from June 12, 2006 through the date of this decision (20 CFR 404.1520(f)).

TR 13-20.

On August 5, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 6, 7. On October 14, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

## A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

<h3 style="text-align:center">C.  Plaintiff's Statement Of Errors</h3>

Plaintiff contends that the ALJ:  (1) erred in her evaluation of Plaintiff's subjective

complaints of pain; (2) improperly evaluated the opinion evidence of record; (3) failed to

consider the combined effects of Plaintiff's impairments; and (4) erroneously determined

Plaintiff's residual functional capacity.  Docket No. 13.  Accordingly, Plaintiff maintains that,

pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the

alternative, remanded.  *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171,

176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

<h3>1.  The ALJ's Evaluation of Plaintiff's Subjective Complaints</h3>

Plaintiff contends that in finding that her subjective complaints were not fully credible,

the ALJ did not appropriately address her complaints of pain.  Docket No. 13.  Plaintiff

maintains that "[h]ad the ALJ considered all her symptoms and the objective medical evidence, she would have found the plaintiff disabled." *Id.*

Defendant responds that, "The ALJ properly determined that Plaintiff's statements concerning the severity of her pain were not entirely credible." Docket No. 16. Specifically, Defendant states that, "after considering the Plaintiff's treatment notes, the objective medical findings, medical opinions, and Plaintiff's daily activities, the ALJ properly concluded that Plaintiff's alleged limitations were not credible to the extent they differed from the residual functional capacity determination." *Id.* Defendant also maintains that, "Substantial evidence supports the ALJ's credibility determination." *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."
*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

Regarding Plaintiff's subjective complaints, the ALJ stated as follows:

> At the hearing, the claimant testified that she has a driver's license with no restrictions. She has more than a high school equivalency diploma, she attended business school. Last time she worked she became so nervous, she quit. She has all over body pain that is hard to handle. She has more body pain with temperature changes. She has been diagnosed with fibromyalgia, but does not remember the physician. She reported her memory has decreased. Dr. Hooper, treating physician told her he did not believe in fibromyalgia, but recommended her to Dr. Yesil, neurologist. She has medication side effects, such as drowsiness, but her injections for pain are helpful. She reported depression due to bereavement over the loss of a close family member. She testified that she is separated; disabled husband makes the house payment because he receives a benefit check for their children that live with the claimant. She reported spending most of her day in the recliner, and her adolescent son does most of the housework, outside work,

and including [*sic*] preparing meals.  She reported activities such as reading for enjoyment, but no church for about three months.  She testified that she has been told she has carpal tunnel syndrome in [her] left hand.  Her symptoms are weakness and tingling sensation, and dropping things.  Also, she reported not much strength with her right hand.  She has the ability to stand about 10 minutes; walk about 10 minutes, and unable to bend or stoop.  She reported losing around 40 pounds, but still weighs around 326 pounds; however, Ms. Hall acknowledged that her weight has been a problem since adolescence.

TR 17.

Ultimately, the ALJ in the case at bar found that Plaintiff's subjective complaints were not fully credible.  TR 18.  Specifically, the ALJ articulated that:

In terms of the claimant's alleged impairments regarding pain including back pain, an x-ray revealed early degenerative disc disease at the lumbar spine, and the claimant complains of paralumbar, parathoracic, and paracervical tenderness.  Range of motion studies shows [*sic*] lumbar-spine was 90 degrees flexion, as observed by the all systems examiner when the claimant put on her shoes.  Also, range of motion of the knees was normal.  She has been diagnosed with probable fibromyalgia, and neurological examination in November 2006 shows that she exhibited a good passive range of motion of all four extremities.  Gait and station were normal.  Her coordination was intact.  She had a normal gait.  She has been diagnosed with carpal tunnel syndrome, but she exhibited equal grip strength at 5/5, or at times no more than 4/5.  Range of motion of her wrist was normal.  She is morbidly obese, but abdomen was markedly obese.  Her extremities were within normal limits.  The claimant reported a diagnosis of fibromyalgia, but the record does not show any physician diagnosing such impairment, but related an impression due to her reported multiple complaints of pain; however, no rheumatologist reported palpable tender points at each of the 18 areas, (11 required), established as criteria for the definitive diagnosis of fibromyalgia by the American College of Rheumatology.  Progress notes from Dr. Foster, her primary care physician shows [*sic*] ongoing follow-up appointments with only mild to moderate intensity, at times, regarding her reported impairments (Exhibits 1F, 7F).

TR 18.

As can be seen by the quoted passages above, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 17-19. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with the above

residual functional capacity assessment."  TR 18.  Specifically, the ALJ stated:

> The Administrative Law Judge does not question the fact that the claimant suffers some degree of limitations and recognizes that the claimant cannot perform strenuous work activity but is, essentially, limited to no more than light exertion.  Although the claimant has some back problems the medical records reveal that she has the ability to perform many normal activities.  Even though she has some pain, she still has the ability to stand and walk satisfactorily.  The evidence shows that she has the ability to do work that requires little or no training.  Her ability to perform such a variety of daily activities, as reported to the consultative psychological examiner, tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences.  Also, one would not reasonably anticipate that a person who experiences any medication side effects from medications, the degree of pain alleged, or depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities. . . .

TR 18-19.

The ALJ observed Plaintiff during her hearing, considered her testimony and her

subjective complaints, assessed the medical records, and reached a reasoned decision; the ALJ's

findings are supported by substantial evidence and the decision not to accord full credibility to

Plaintiff's allegations was proper.  Therefore, this claim fails.

## 2.  The ALJ's Evaluation of the Opinion Evidence

Plaintiff maintains that, "The ALJ committed reversible error in failing to give

controlling weight to the medical opinion expressed by Dr. Linda A. Foster, who was her

primary care physician during the relevant period."  Docket No. 13.  Plaintiff states, "Dr. Foster

had been treating plaintiff for several years and certainly had 'obtained a detailed longitudinal

picture of her impairments,' so as to warrant the ALJ giving greater weight to her opinion than to

other, merely consultative opinions, especially those opinions rendered by the DDS doctors who never laid eyes on the plaintiff and who did not even have available all of plaintiff's medical records for review." *Id.*

Plaintiff also contends that the ALJ failed to properly discuss the opinion of Dr. Melvin Blevins, consultative examiner, because she did not discuss his RFC finding, and that the ALJ should have accorded more weight to his opinion than the opinions of the State agency physicians because "Dr. Blevins had actually seen and examined the plaintiff in contrast to the State [a]gency physicians . . . ." *Id.* Plaintiff argues that the opinions of the State agency physicians "should be afforded little or no weight whatsoever as they are predicated upon an incomplete medical and evidentiary record, and they lack 'consistency' with the other evidence in the record, especially the credible testimony of the plaintiff and the assessment of her treating physician." *Id.*

Defendant responds that, "The ALJ properly assigned little to no wight to Dr. Foster's opinion because there was no support in Dr. Foster's progress notes, including no objective findings, that correlated with the limited function-by-function assessment in her opinion." Docket No. 16. Defendant continues, "In fact, Dr. Foster's notes are almost entirely inconsistent with her assessment." *Id.* Defendant also responds that the ALJ appropriately evaluated the opinions of Dr. Blevins and the State agency physicians, and properly decided to accord them "weight." *Id.* Accordingly, Defendant maintains that the ALJ did not err in her evaluation of the opinion evidence. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of

Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502. Additionally, an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983).

On May 26, 2009, Plaintiff's treating physician, Dr. Linda A. Foster, completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" assessment regarding Plaintiff. TR 458-61. In that assessment, Dr. Foster reported that Plaintiff could occasionally lift and/or carry less than ten pounds but could not frequently lift and/or carry. TR 458. As support for this finding, Dr. Foster noted Plaintiff's degenerative disc disease with radicular pain, fibromyalgia with chronic musculoskeletal pain, left carpal tunnel syndrome, morbid obesity, osteoarthritis, chronic pain, and fatigue, "all as evidenced by physical findings, imaging, tests, [and] consultative examinations." *Id.*

Dr. Foster also reported that Plaintiff could stand and/or walk less than two hours total in an eight-hour workday and only for approximately ten minutes without interruption. TR 459. As support for this finding, Dr. Foster opined, "Standing is limited due to the severe pain she experiences in her back and the weakness and fatigue from the fibromyalgia," and "[w]alking is difficult because [Plaintiff] loses her balance." *Id.* Dr. Foster additionally reported that Plaintiff could sit for three to four hours total in an eight-hour workday and for only approximately ten to fifteen minutes without interruption. *Id.* As support for this finding, Dr. Foster noted, "Sitting exacerbates her back pain," and "[Plaintiff] states she is only comfortable in a recliner." *Id.*

15

Dr. Foster reported that Plaintiff could rarely climb ramps or stairs, balance, crouch, kneel, crawl, and/or stoop, and could never climb on ladders, ropes, or scaffolds. *Id.* Dr. Foster also reported that Plaintiff's reaching, handling, fingering (fine manipulation), pushing, pulling, and hearing were all affected by her impairments. TR 460. Relatedly, Dr. Foster opined, "Reaching, pushing/pulling are affected due to the problems with her low back, as well as fibromyalgia symptoms," and "[t]he ability to handle and finger are affected by her carpal tunnel syndrome of the left hand." *Id.*

Dr. Foster further reported that Plaintiff suffered several environmental restrictions as a result of her impairments. *Id.* Specifically, Dr. Foster opined that, "Heights and moving machinery increase the possibility of injury due to patient's slowed mobility," and that "[t]his patient has depression/anxiety that may be accelerated with excessive noise." TR 461. Additionally, Dr. Foster noted that, "This patient suffers from depression and anxiety, fairly well controlled with medication," and opined that "[h]er chronic, high level of pain will also affect work-related activities." *Id.*

On September 19, 2006, DDS physician, Dr. Melvin Blevins, provided a functional assessment regarding Plaintiff. TR 337-46. In that assessment, Dr. Blevins opined that Plaintiff could occasionally lift up to fifteen pounds but could not frequently lift; could stand less than two hours per day; and could sit less than four hours per day. TR 343. The ALJ summarized Dr. Blevins's examination as follows:

> During a consultative all systems examination, Dr. Blevins in September 2006, noted a well-developed, well-hydrated, obese person in no acute distress. She was alert and oriented. Her neck demonstrated no adenopathy, thyromegaly, or bruits. She was positive for Heberden's nodes, but no other periarticular changes or effusions. She had no crepitance. Spinal configuration was

16

grossly normal. She had no muscular spasm, no paralumbar, parathoracic, and paracervical tenderness, but tenderness was in and about the arms and shoulder. She had no noted muscle wasting. No spasticity or rigidity. She was able to make a fist, extend fingers, and oppose fingers to thumb. Pinch and grip strengths were 3/4 bilaterally. Gait and station appeared normal. Transfers on and off the examination table or up from a chair, bending, and squatting and rising, were accomplished slowly, guardedly and with some difficulty. Deep tendon reflexes are 4/4 in both the right and left upper extremities, and 3/4 in both right and left lower extremities. Straight leg raising was somewhat decreased. A back x-ray revealed lumbar spine with early degenerative lumbar disc disease, some osteoarthritis, and lumbar strain (Exhibit 3F).

TR 14.

On October 2, 2006, State agency medical consultant, Dr. Robert T. Doster, completed a "Physical Residual Functional Capacity Assessment" regarding Plaintiff. TR 365-72. In that assessment, Dr. Doster opined that Plaintiff could occasionally lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and push and/or pull without limitation. TR 366. Dr. Doster also opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds. TR 367. He further opined that Plaintiff was limited in her frequency of handling and fingering, but unlimited in her abilities to reach and feel. TR 368. He noted that she did not have any visual, communicative, or environmental limitations. TR 368-69.

On May 7, 2007, State agency medical consultant, Dr. Lloyd A. Walwyn, completed a "Physical Residual Functional Capacity Assessment" regarding Plaintiff. TR 394-401. In that assessment, Dr. Walwyn opined that Plaintiff could occasionally lift and/or carry fifty pounds

and could frequently lift and/or carry twenty-five pounds.  TR 395.  Dr. Walwyn also opined that

Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-

hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday;

and push and/or pull without limitation.  *Id.*

Dr. Walwyn also reported that Plaintiff could frequently climb, balance, stoop, kneel,

crouch, and/or crawl.  TR 396.  Dr. Walwyn additionally reported that Plaintiff's handling and

fingering were limited, but that Plaintiff had no visual, communicative, or environmental

limitations.  TR 397-98.  Dr. Walwyn stated that Plaintiff's pain was partially credible.  TR 399.

Dr. Walwyn opined that the medical assessment of Dr. Blevins was "too restrictive based on the

objective medical evidence."  TR 400.  In Dr. Walwyn's additional comments, he summarized

the findings of Dr. Blevins's consultative examination and the results of one of Plaintiff's

neurological exams, and then concluded:

> Cl's allegation of pain is partially credible. Cl does have DDD of
> the L-spine and hx of fibromyalgia and [carpal tunnel syndrome].
> Cl is also morbidly obese.  Impairments are severe, but [short of
> listing severity]....

TR 401.

With regard to the weight accorded to the opinion evidence of record, the ALJ, in her

opinion, stated:

> As for the opinion evidence, the undersigned gives weight to the
> opinion of the DDS reviewing physicians regarding her physical
> and mental impairments and limitations, with weight to the
> opinions of the consultative examining psychologist and
> consultative examiner that performed an all system examination
> (Exhibits 2F, 3F, 4F, 10F, 11F).  The residual functional capacity
> accommodates their assessments and/or opinions.  It is noted that
> the claimant has not sought nor has she been advised to seek any
> ongoing treatment for any mental impairment since she attended

only one therapy session for bereavement purposes. The record
does contain an opinion from a treating physician, Dr. Foster,
which assessed less than sedentary exertion, but the undersigned
give[s] little if any weight given the progress notes do not correlate
with such limited function by function assessment since there are
no objective findings (Exhibit 14F) that would validate such
assessment. It appears the physician only assessed her subjective
symptoms, which indicated limitations greater than those
determined in this decision.

TR 18.

Dr. Foster treated Plaintiff for a period of time, a fact that would justify the ALJ's giving

greater weight to her opinion than to other opinions. As has been demonstrated, however, Dr.

Foster's opinion contradicts other substantial evidence in the record. Moreover, as the ALJ

stated, Dr. Foster's opinion was inconsistent with, and unsupported by, her own progress notes,

and Dr. Foster's opinion was based primarily upon Plaintiff's subjective complaints, which the

ALJ properly found not to be fully credible, as discussed above. TR 18, 458-61.

As the Regulations state, the ALJ is not required to give controlling weight to a treating

physician's evaluation when that evaluation is inconsistent with other substantial evidence in the

record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is

contradictory evidence, the treating physician's opinion is weighed against the contradictory

evidence under the criteria listed above. *Id.* When the opinions of treating physicians are

inconsistent with each other, the final decision regarding the weight to be given to the differing

opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do

not mandate that the ALJ accord Dr. Foster's evaluation controlling weight.

With regard to Plaintiff's argument that the ALJ only partially considered Dr. Blevins'

opinion because the ALJ failed to discuss Dr. Blevins' RFC assessment of Plaintiff, the quoted

passage above demonstrates that the ALJ explicitly mentions the "consultative examiner" and cites Exhibit 3F, Dr. Blevins's consultative examination report that contained his RFC assessment, indicating that the ALJ considered Dr. Blevins' opinion. TR 18.

As noted above, Plaintiff additionally contends that the ALJ should have given more weight to Dr. Blevins' opinion than to the opinions of the State agency physicians because Dr. Blevins examined Plaintiff, while the State agency physicians did not, and because the State agency physicians did not have a complete medical and evidentiary record before them. Docket No. 13. Specifically, Plaintiff contends that Dr. Doster completed a Physical RFC Assessment of Plaintiff on October 2, 2006, reviewing only the May 2004 through August 2006 records from Dr. Foster and the consultative examination performed by Dr. Blevins; and that Dr. Walwyn completed a Physical RFC Physical Assessment on May 7, 2007, reviewing "more records than Dr. Doster," but having only a few visits from the treating neurologist in the record at the time. *Id.* Plaintiff argues that the opinions of Dr. Doster and Dr. Walwyn "should be afforded little or no weight whatsoever" because they did not review Plaintiff's complete medical record, and because their opinions are inconsistent "with other evidence of record, especially the credible testimony of the plaintiff and the assessment of her treating physician." *Id.*

Under 20 C.F.R. § 416.927(d), provided above, the ALJ must consider all medical opinions and weigh the factors discussed therein. When considering the total evidence of record, the ALJ in the case at bar considered each of the opinions at issue and accorded them "weight." TR 18. The ALJ did not specifically accord more weight to one than to another, and the Regulations do not require her to do so. Moreover, as discussed above, the ALJ properly determined that Plaintiff's subjective complaints were not fully credible, and the ALJ

appropriately decided to accord little or no weight to the opinion of Dr. Foster.

Because the ALJ properly rejected the opinion of treating physician Dr. Foster and properly evaluated the opinions of record, Plaintiff's argument fails.

### 3.  The Combined Effect of Plaintiff's Impairments and the Listings

Plaintiff contends that the ALJ failed to properly evaluate the combined effect of her impairments, and erroneously found that her severe impairments did not meet or medically equal a Listing.  Docket No. 13.  Specifically, Plaintiff argues that the ALJ failed to give proper weight to her obesity and fibromyalgia.  *Id.*

Defendant responds that the ALJ explicitly discussed Plaintiff's obesity, and thoroughly evaluated all of Plaintiff's impairments and the medical evidence at length, noting the clinical findings and studies that supported her finding that, while Plaintiff had severe impairments, those impairments did not meet or medically equal a Listing.  Docket No. 16.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments.  42 U.S.C. § 423(d)(2)(B).  Plaintiff, however, fails to show that the ALJ did not do so.  Instead, Plaintiff simply maintains that "[h]ad the ALJ considered all [Plaintiff's] symptoms and the objective medical evidence, she would have found the plaintiff disabled."  Docket No. 13.

The ALJ, after evaluating all of the medical, vocational, and testimonial evidence, determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing.  TR 15-16.  In making this determination, the ALJ explained that:

> No treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity.  The undersigned has considered listings relative to the above severe impairments but does not find the presence of any

criteria set forth in said listings to warrant a finding that the
claimant meets or equals any listing. Also, in accordance with
SSR 02-1p, the undersigned has considered the impact obesity has
on limitation of function including the claimant's ability to
perform routine movement and necessary physical activity within
the work environment. In this case, the claimant's obesity is
exacerbating her condition, but there is no indication she has
attempted or achieved any significant weight loss thus far. Even
with her heavy weight and degenerative spinal condition, she
worked for many years. There is no basis for a finding [that] her
obesity alone or when combined with her musculoskeletal
condition [] precludes all work activity.

TR 15.

In regard to Plaintiff's fibromyalgia, the ALJ noted that:

The claimant reports that she hurts all over regarding fibromyalgia
including the upper and lower extremities and back. She states her
worst areas are in about her shoulders and arms. She reports
intermittent tenderness of both hands. . . . She was prescribed
Percocet for reported pain, and counseled to exercise. Ongoing
progress notes show her complaints of weakness and fatigue
resolved in March 2007. Also, musculoskeletal complaints were
stable including muscular pain, muscle weakness, muscular
cramps, joint stiffness, joint pain including swelling, and back
pain. . . .

TR 13 -14 (*citing* Exhibit 13F).

As previously noted, the ALJ also stated:

The claimant reported a diagnosis of fibromyalgia, but the record
does not show any physician diagnosing such impairment, but
related an impression due to her reported multiple complaints of
pain; however, no rheumatologist reported palpable tender points
at each of the 18 areas, (11 required), established as criteria for the
definitive diagnosis of fibromyalgia by the American College of
Rheumatology.

TR 18.

As has been demonstrated, the ALJ's decision specifically addresses the medical

evidence, the opinion evidence, and Plaintiff's testimony and subjective claims, including Plaintiff's obesity and fibromyalgia, clearly indicating that these impairments were considered. TR 13-19. There is no evidence to support Plaintiff's claims that the ALJ failed to consider the combined effect of Plaintiff's impairments, Plaintiff's obesity, SSR 02-1p, or Listing 1.02. To the contrary, it is clear from the ALJ's detailed articulated rationale that the ALJ considered the evidence of record as a whole in evaluating Plaintiff's impairments, individually and in combination.

There is substantial evidence in the record to support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing; the ALJ's decision, therefore, must stand.


**4. The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Plaintiff maintains that, "A review of the entire record reveals that the plaintiff is not capable of performing light work, a reduced range of light work as the ALJ found, sedentary work or any work on a sustained basis." Docket No. 13. Defendant responds that, "The ALJ properly considered all of the evidence of record in determining Plaintiff's residual functional capacity." Docket No. 16.

"Residual functional capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's residual functional capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature
> and extent of your physical limitations and then determine your

> residual functional capacity for work activity on a regular and
> continuing basis. A limited ability to perform certain physical
> demands of work activity, such as sitting, standing, walking,
> lifting, carrying, pushing, pulling, or other physical functions
> (including manipulative or postural functions, such as reaching,
> handling, stooping or crouching), may reduce your ability to do
> past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ, in her fifth finding, determined that Plaintiff retained the residual functional capacity to perform light work with the following limitations: Plaintiff can perform no more than occasional postural activities; Plaintiff needs to avoid extreme temperatures including humidity; and Plaintiff is unable to constantly use her hands. TR 16. The ALJ also determined that Plaintiff has "limited but satisfactory or mild limitations when dealing with the public; with work stresses; maintaining attention/concentration; ability to understand, remember, and carry out detailed instructions; respond appropriately to changes in the work setting, and the ability to complete a normal workweek." TR 16-17.

In arguing that the ALJ erred in her determination that Plaintiff retained the residual functional capacity to perform a reduced range of light work, Plaintiff makes no attempt to demonstrate how the ALJ failed to apply the Regulations. Instead, Plaintiff merely suggests that there is substantial evidence within the record to support a finding of disability rather than the ALJ's finding that Plaintiff can still perform her past relevant work. TR 19; *see* Docket No 13.

As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere

scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here is replete with doctors' evaluations, medical assessments, test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis," and all of which constitute "substantial evidence." The ALJ, after evaluating all of the objective medical evidence of record and the claimant's level of activity, determined that Plaintiff retained the residual functional capacity to perform light work with some restrictions. TR 16-17. The ALJ properly evaluated the evidence in reaching this residual functional capacity determination, and the Regulations do not require more.

As discussed above, the ALJ's determination that Plaintiff had the residual functional capacity to perform a reduced range of light work is supported by the ALJ's evaluation of Plaintiff's subjective complaints of pain, the objective medical evidence of record, the opinion evidence of record, and the combined effect of Plaintiff's multiple severe impairments. TR 13-19. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff retains the residual functional capacity to perform a reduced range of light work. TR 16-17, 19.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner,* 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her,* 203 F.3d at 389 (*citing Key,* 109 F.3d at 273). The ALJ's decision was

properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment Based Upon the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge